**COMMONWEALTH OF PENNSYLVANIA** : IN THE COURT OF COMMON PLEAS

v.                                         : BRADFORD COUNTY, PENNSYLVANIA

**RONALD JAMES BAKER**            : NO. 96&000716

:  )  :    :    :    :    :    :    :    :    :    :    :    :    :

## TRANSCRIPT OF PROCEEDINGS

### SENTENCING PROCEEDING

BEFORE: MOTT, J.

DATE: AUGUST 18, 1997

WHERE: COURTROOM NUMBER TWO
        BRADFORD COUNTY COURTHOUSE
        TOWANDA, PENNSYLVANIA

**APPEARANCES:**

**FOR THE COMMONWEALTH:**
    **ROBERT B. McGUINNESS, ESQ.**
    **DISTRICT ATTORNEY**

**FOR THE DEFENDANT:**
    **SUSAN E. HARTLEY, ESQ.**
    **ATHENS, PENNSYLVANIA**

**OFFICIAL COURT REPORTER**
**JULIE L. LUNDQUIST**

1   Commw. v. Ronald James Baker, 96 FC 000716

2   August 18, 1997, plea proceeding

3                    *      *      *

4           MR. McGUINNESS: Commonwealth next calls the

5   case of Commonwealth of Pennsylvania versus Ronald James

6   Baker, number 96 CR 716.  For the record, we'll note the presence

7   of the Defendant, appearing with counsel, Ms. Hartley.  The

8   Defendant is before the Court at this time to be sentenced on two

9   counts of accidents involving injury or death by an unlicensed

10  operator, two counts of aggravated assault by motor vehicle while

11  driving under the influence of alcohol, two counts of reckless

12  endangerment, one count of driving under the influence of alcohol,

13  one count of driving while suspended or operating privileges

14  suspended or revoked as a repeat offender.

15          We would note that a pre-sentence investigation report

16  has been prepared in anticipation of sentencing at this time.

17          THE COURT: The Court has in its -

18          MR. McGUINNESS: I would note that there is no

19  CRN evaluation.

20          THE COURT:  All right.  The Court has in its

21  possession a pre-sentence investigation report prepared by the

22  Bradford County Probation Office, which the Court has reviewed

23  in anticipation of today's sentencing proceeding.  Attached to the

24  report is - sentencing guideline forms indicating that on the DUI

25  charge, the Defendant has no prior DUI dispositions in the

1

1   previous seven years.  Also attached to the report are sentencing

2   guidelines forms indicating offense gravity score, prior record

3   score and range for the minimum end of the sentence for each of

4   the other offenses other than the summary offenses, of course, to

5   which the guidelines don't apply.

6          On the two counts of accident involving injury or

7   death by unlicensed operator, the Defendant's prior record score

8   is zero, the offense gravity score is five, and the range for the

9   minimum end of the sentence for each of those offenses, the offense

10  gravity score and prior record score being the same on each - the

11  ranges are also the same for each.  They are as follows: In the

12  mitigated range, the guidelines call for a sentence of no

13  punishment to restorative sanctions.  In the standard range, at

14  sentencing level two, it's restorative sanctions to six months.  In the

15  aggravated range, at sentencing level three, it's six to nine months.

16         On the two counts of - strike that.  On the first count

17  of aggravated assault by motor vehicle while under the influence of

18  alcohol, the Defendant's prior record score is three, the offense

19  gravity score is seven, yielding a range for the minimum end of the

20  sentence in the mitigated range, at sentencing level three, it's ten to

21  sixteen months.  In the standard range, at sentencing level four,

22  it's sixteen to twenty-four months.  And in the aggravated range at

23  sentencing level four, it's twenty-four to thirty months.

24         On the second count of aggravated assault by motor vehicle

25  while driving under the influence, the prior record score is zero,

2

1  the offense gravity score is seven, yielding a range for the

2  minimum end of the sentence, in the mitigated range, at sentencing

3  level one, it's restorative sanctions to four months.  In the standard

4  range at sentencing level three, it's four to twelve months, and in

5  the aggravated range at sentencing level four, it's twelve to

6  eighteen months.

7          On the two counts of reckless endangerment, the prior

8  record score, offense gravity score and range for the minimum end

9  of the sentence are the same, and they are as follows:  The prior

10 record score is zero, the offense gravity score is three, range for

11 the minimum end of the sentence is no punishment to restorative

12 sanctions in the mitigated range.   In the standard range at

13 sentencing level two, it's restorative sanctions to restrictive

14 intermediate punishment, in the aggravated range at sentencing

15 level three, it's restrictive intermediate punishment to three

16 months.

17          Also attached to the report are victim impact

18 statements filed by the victims in this case, Richard Benjamin,

19 junior, making no monetary request for restitution.  There's one

20 filed by Fred Vanderpool, also making no monetary request for

21 restitution.  There is a victim impact statement filed by the victim,

22 or on behalf of the victim, Chelsea Brenner, which makes a total

23 restitution request of eighty-three thousand, eight hundred and

24 ninety-four dollars and thirty-five cents. And there is a victim

25 impact statement also filed by Kim Benjamin, I believe, yes, -

1   which makes a total restitution request of eighteen thousand, three

2   hundred and forty-seven dollars, and sixty-two cents.  And there

3   are also some copies of hospital bills to document those expenses.

4           Ms. Hartley, have you had the opportunity to review

5   the pre-sentence report?

6           MS. HARTLEY: Yes, I have, Your Honor.

7           THE COURT:  Is there anything you wish to say or

8   present on behalf of your client?

9           MS. HARTLEY: Well, Judge, the pre-sentence

10  investigation report does recommend that the Court accept the

11  plea agreement entered into by and between the Commonwealth

12  and the Defendant, and further reflects that the Defendant states

13  that he does feel remorse and does take responsibility for his

14  actions.  We feel that the plea agreement that was negotiated

15  between counsel adequately takes into consideration the

16  Defendant's significant prior criminal history.

17          Judge, as to restitution, my understanding from

18  speaking with the victim witness coordinator, was that the request

19  was for thirteen thousand, one hundred thirty-one dollars and

20  thirty-three cents, to which the Defendant does not take issue.

21  Additionally, Judge, Mr. -

22          THE COURT: What was that figure again?

23          MS. HARTLEY: Thirteen thousand, one thirty-one,

24  point - thirty-three.  There's a memo from Mr. Wilcox in the PSI

25  to that effect.

4

1       THE COURT:  Either I don't have a copy of it or I

2   missed it -

3       MS. HARTLEY:  It's right after the Fred Vanderpool

4   victim impact statement, it's kind of towards the front.

5       THE COURT:  I don't have that.

6       MS. HARTLEY:  May I approach, Judge?

7       THE COURT:  Could I see a copy of it, please?

8   *(Memo presented to Court)*

9       THE COURT:  I am aware of that memo now that it

10  has been given to me, however, that indicates to me that that's

11  simply the amount of bills that have not been covered by

12  insurance, which would be due to the individual victims in this

13  case.  It's long been this Court's policy that it orders full

14  restitution for the full amount.  The insurance companies have as

15  much right to recover what they paid as do the victims.

16      MS. HARTLEY:  The Defendant understands the

17  Court's position, Judge, thank you.  Additionally, Your Honor,

18  Mr. Baker is scheduled to have surgery on his leg tomorrow.  We

19  have arranged with the Sheriff that Mr. Baker will be kept

20  incarcerated in Bradford County until such time as his surgeon

21  releases him.  I would ask that the Court reflect that in the Court's

22  sentencing order since clearly Mr. Baker will be receiving a

23  sentence of state time.  It's my understanding, typically, the Court

24  says -- immediately the Sheriff will remand him to -

25      THE COURT:  I never say immediately the Sheriff is

1   to transport - when I sentence to an institution, it's up to the

2   Sheriff to do what he wishes with that order. You're asking for an

3   order to specifically say something?

4            MS. HARTLEY: I was under the impression, Judge,

5   that you put those - that you, at the time that you sentence, that

6   you say that the Sheriff will immediately transport to state, but if

7   you don't do that, then that's not relevant -

8            THE COURT: I don't think I've ever done that. I

9   don't think I've ever once done that. I could be wrong, but I don't

10  think I've ever once done that. I mean, the Sheriff, we may have

11  somebody sentenced to state correctional institution today and

12  another one tomorrow and another one the next day and so on and

13  so forth and it may be - much more cost effective for the Sheriff to

14  wait a week and transport them altogether rather than do three or

15  four different trips, and I've always left that up to that office. Mr.

16  McGuinness, anything on behalf of the Commonwealth?

17           MR. McGUINNESS: Yes, Judge. In this case, first of

18  all, it's the Commonwealth's position that sentencing should go

19  forward despite the absence of the CRN evaluation as merger will

20  take care of the DUI offense anyway. In this case, we believe that

21  the Defendant should be sentenced on four counts, they being -

22  accidents involving injury or death by an unlicensed operator and

23  the two counts of aggravated assault while driving a motor vehicle

24  under the influence of alcohol. We believe that the other offenses

25  of reckless endangerment, the DUI and the driving while

1  suspended, merge into these offenses for purposes of sentencing.

2  And I believe that the defense agrees that this is a proper verdict.

3  We think in this case, the Commonwealth has brought

4  before the Court to be sentenced, an individual who has spent an

5  entire lifetime of thirty-six years proving to be nothing more than

6  a sociopath and a menace. Mr. Baker has no respect when he's on

7  the street whatsoever for the laws of society and the rights of other

8  individuals. He has been arrested, by the pre-sentence

9  investigation report, or charged with a criminal offense, on no less

10  than twenty-seven occasions. He's been sentenced to the state

11  penitentiary. He's received every single level of punishment that

12  an individual can have and Mr. Baker continually flaunts the law.

13  In this case, he drives without a drivers license. His

14  driving record indicates that he never in his lifetime possessed a

15  valid drivers license. Nonetheless, he drives on the roadways of

16  the Commonwealth at will. He was arrested, during the week in

17  which he was arrested or stopped, during the week at least three

18  times before he committed this offense.

19  This is his first DUI, but he has a long history of use of

20  abuse of alcohol and drugs. No other individual, to my knowledge,

21  and I have been intimately involved in the Bradford County

22  criminal justice system for the last eleven years, no other

23  individual has been before the Court so many times for inflicting

24  injuries on other people. For PFAs, for harassments, for assaults,

25  this individual just simply feels that no law whatsoever prevents

7

1    him from, when he's under the influence of drugs and alcohol,

2    from inflicting injuries on anyone who gets in his path.

3           In this case, Mr. Baker was under the influence of

4    alcohol.  A BAC report shows point one, two, five, (.125) but it

5    must be noted that he had received a blood transfusion which

6    diluted the BAC.  He was, by his own report, he consumed thirty

7    drinks of vodka and orange juice prior to driving.  And he drove

8    on a road, a winding two lane road, where he had no clear

9    visibility, at a high rate of speed, passing another vehicle, not

10   having a drivers license, he had no care whatsoever or regard for

11   other individuals or vehicles in his same direction of travel on the

12   roadway.  There was a car that contained infants, he had no

13   regard whatsoever for them, he knew these people, he had

14   socialized with these people.  He drove like a maniac and he struck

15   head-on, three people that were completely innocent, coming in the

16   opposite direction, being Ms. Benjamin, her son Richard, and

17   daughter Chelsea, struck them head-on.

18           He did such injuries to the child as to require eighty

19   thousand dollars in surgeries and the child's not done - there were

20   ten facial fractures.  He crushed the ankles of Kim Benjamin.  It's

21   a miracle that these individuals lived.  It's a miracle that the child,

22   Richard Benjamin, was uninjured in this accident.  But, but for the

23   miracle or the intervention, or the engineering of the vehicle,

24   whatever it is, fate whatever, Kim Benjamin, Richard Benjamin

25   and Chelsea Brenner would be dead by the conduct of this

1   Defendant.  He just drove like a maniac, struck this vehicle right

2   head-on.

3           Mr. Baker's always sorry when he comes to court, but

4   anytime he gets out on the street, the first thing he does is assault

5   somebody, get into drugs and alcohol, and drive, ostensibly without

6   a license, without insurance that would adequately compensate

7   these individuals.

8           Mr. Baker's record shows next to nothing as far as

9   ever being employed.  He has accumulated no assets.  These things

10  speak highly of - of the nature of the lifetime that he's led.  He's

11  got an eighth grade education.  He doesn't work.  All he does is

12  abuse drugs and alcohol, get incarcerated, be supported at the

13  taxpayers' expense.  The taxpayers of this Commonwealth have to

14  pay now to mend him with these surgeries and operations and feed

15  and clothe him while he's in prison.

16          He has done nothing in his lifetime, as is indicated in

17  this pre-sentence report, nothing of a positive nature whatsoever.

18  He is a menace and society will be best off if he is committed to a

19  state correctional institution for as long as possible as far as the

20  maximum sentence in this case.

21          We have, in this case, in entering into a plea

22  agreement, attempted to save the victims of this offense, the

23  tragedy of having to relive through a trial, these horrific events.

24  We have tried to save the Commonwealth the additional expenses

25  of expert witnesses that would have to testify, and the costs of the

9

1   trial, so we've entered into it, and by doing so, have agreed to a

2   sentence that exceeds the aggravated range of the sentencing

3   guidelines.  And given the nature of Mr. Baker's contact through

4   the criminal justice system, they are such, that the prior record

5   score that's computed by three here, grossly understates the

6   nature of his involvement in the criminal justice system.

7         If you look at the three pages of offenses that are

8   reported to the Court in the pre-sentence investigation report, it's

9   hard to imagine how this individual is not a five prior record score

10   or a -- but the nature of simple assault as it is, I suppose, and that

11   being his crimes of choice, the day he happened to be driving

12   without a license and driving under suspension, being his crime of

13   choice, or the most frequently occurring - and harassment not

14   committing to - or not counting, the pre-sentence investigation

15   report, the PRS, is probably why.  But this individual is a career

16   criminal, this individual is a menace, the people of Bradford

17   County are best served by his commitment to a state correctional

18   facility for this sentence of seven and a half years, which is beyond

19   the aggravated range and the guidelines.  We ask that the Court

20   impose the maximum sentence, the highest maximum sentence

21   possible in this case - that would be thirty-four years.  I think that

22   this will allow the state parole to supervise Mr. Baker, and

23   incarcerate him, if necessary, until he's up to seventy years of age.

24   He is a menace, and he - the people of this community are best

25   served by his commitment to an institution for as long as possible.

1    There is no rehabilitation for this individual.  He's always been

2    real good at expressing remorse and crying when he comes to

3    court, when he's going to get to face his punishment.  But it never

4    does much to straighten him up.

5              There are no periods of law abiding activity on his

6    part.  The only time it breaks up between offenses in Mr. Baker's

7    record, are those periods in time when he's committed to a facility.

8    He belongs in a state prison.  This is the type of individual that the

9    state spent millions of dollars to build state correctional facilities

10   for, to keep them, and house them away, where they can't hurt the

11   rest of society, where decent people, like Kim Benjamin and her

12   two children, can know for the next seven and a half years that

13   when they go around a turn in the road, there won't be a drunken

14   maniac, without a license, and without insurance, coming in their

15   lane of travel to meet them and send them to the hospital for long

16   periods of time.

17             For all the suffering that Mr. Baker has caused in his

18   lifetime, the sentence of seven and a half to thirty-four years, is a

19   small penalty to pay.  This individual simply should be locked

20   away.  And rehabilitation, I don't know that there's ever going to

21   be any rehabilitation of Ronald Baker.  Thank you.

22             THE COURT:  Mr. Baker, is there anything you

23   would like to say to the Court before the Court imposes sentence?

24             RONALD BAKER:  No, Your Honor.

25             THE COURT:  All right, Mr. Baker, in this case, I

1  have considered your age, the information about you that is in the

2  pre-sentence investigation report, the information about you that

3  has been related here this afternoon, as well as, the evidence of the

4  circumstances of the offenses.  The facts as to your personal

5  background and circumstances are found to be as set forth in the

6  pre-sentence report and are apparently not in dispute.  The facts

7  of the offenses have been admitted.

8              In addition, I have considered your prior criminal

9  record, your personal characteristics, your potential for

10  rehabilitation, and all the available alternatives to total

11  confinement, including any factors weighing in favor of probation

12  of partial confinement.   After considering all these factors, I find

13  that there is an undue risk that during any period of probation or

14  partial confinement, you will commit another crime, that you are

15  in need of correctional treatment and rehabilitation that can best

16  be provided by your commitment to an institution and that a lesser

17  sentence would depreciate the seriousness of your crimes.  I,

18  therefore, find that a sentence of total confinement is proper.

19              Accordingly, the Court would enter the following

20  Order:

21              AND NOW, today's date, (18 August 1997), on the

22  first count of aggravated assault by motor vehicle while driving

23  under the influence of alcohol, the Defendant is sentenced to pay

24  the costs, to pay all mandatory and discretionary charges, to make

25  restitution of eighty-three thousand, eight hundred ninety-four

1  dollars and thirty-five cents, and to undergo imprisonment for a

2  period of not less than thirty months nor more than one hundred

3  and twenty months.

4          On the second count of aggravated assault by motor

5  vehicle while driving under the influence of alcohol, the Defendant

6  is sentenced to make restitution of eighteen thousand, three

7  hundred and forty-seven dollars and sixty-two cents, and to

8  undergo imprisonment for a period of not less than thirty months,

9  nor more than one hundred and twenty months.

10          On the first count of aggravated - strike that, - of

11  accident involving injury by unlicensed operator, the Defendant is

12  sentenced to undergo imprisonment for a period of not less than

13  fifteen months nor more than thirty months.

14          On the second count of accident involving injury by

15  unlicensed operator, the Defendant is sentenced to undergo

16  imprisonment for not less than fifteen months, nor more than

17  thirty months.  These sentences shall run consecutively with each

18  other.

19          It is the intention of the Court hereby that the

20  Defendant's total period of confinement shall be not less than

21  seven and one half years, nor more than twenty-five years, and he

22  shall stand committed in a state correctional institution until the

23  said sentence is served in full.  No further sentence is imposed for

24  the other charges the Defendant pleaded guilty to as they all merge

25  for sentencing purposes with one or more of the foregoing charges.

1

2        The Court hereby grants the Commonwealth's motion

3 and dismisses any remaining charges filed against the Defendant

4 in these matters.  That would conclude the Court's order.

5        The Court believes that the sentence imposed is

6 consistent with the protection needs of the public, the gravity of

7 these offenses as they relate to the impact on the life of the victims

8 and on the community, and the rehabilitative needs of the

9 Defendant.

10        The sentence falls above and outside of even the

11 aggravated range of the sentencing guidelines for the reasons

12 already stated on the record.

13        In addition, as has been related here extensively by the

14 Commonwealth, which I won't repeat all of which has been

15 indicated, most of which is accurate, but I would indicate as the

16 pre-sentence investigation report does, that Mr. Baker is certainly

17 not a stranger to the criminal justice system.  He has been

18 consistently involved with the criminal courts since 1981.  The

19 majority of his prior offenses are assaultive in nature.

20 Furthermore, he has a very poor driving history, and he is an

21 individual that has no business driving at all, having apparently

22 never - never had - having a valid drivers license.  He has a

23 lengthy history of drug and alcohol abuse.  He was unresponsive

24 previously when he was sentenced to probation supervision by the

25 Courts'.  He was unresponsive to earlier parole supervision when

14

1   he was sentenced by the Court and then released on parole.  Prior

2   orders of probation, parole and work release have all been

3   violated, and the last sentence he received was a two and a half to

4   five year sentence of incarceration, and even that, apparently had

5   no effect on this Defendant.

6            The sentence imposed also is, as it is, in order to

7   comply with the plea agreement, it does comply with the plea

8   agreement and the recommendation of the Bradford County

9   Probation Office.

10           Ms. Hartley, have you completed a post-sentence

11  rights advisory form with your client?

12           MS. HARTLEY: Yes, I have, Your Honor.

13           THE COURT: Would you present that to the Court,

14  please?

15  *(Rights Advisory Form presented)*

16           THE COURT: Mr. Baker, are these your initials on

17  this form?

18           RONALD BAKER: Yes, Your Honor.

19           THE COURT: Is this your signature on the form?

20           RONALD BAKER: Yes, Your Honor.

21           THE COURT: Do you understand everything that's

22  on here?

23           RONALD BAKER: Yes, Your Honor.

24           THE COURT: In addition to what's on that form, Mr.

25  Baker, I must advise you that you can still appeal to a higher court

1    even if you do not first file a post-sentence motion with this Court,

2    but you do have the right to file such a motion with this Court if

3    you choose to do so. Do you understand that?

4                RONALD BAKER: Yes, Your Honor.

5                THE COURT: If you do file such a motion with this

6    Court, it must be in writing, it must state with specificity and

7    particularity the relief that you are requesting, including any

8    motion to withdraw or challenge the validity of your plea of guilty.

9    Do you understand that?

10                RONALD BAKER: Yes, Your Honor.

11                THE COURT: I must make a decision on the motion

12    within one hundred and twenty days of its filing unless that

13    deadline is extended for good cause on your request, for a

14    maximum of thirty additional days. Do you understand that?

15                RONALD BAKER: Yes, Your Honor.

16                THE COURT: If I do not make a decision on the

17    motion within that time period, the motion will automatically be

18    deemed to be denied and your sole remedy will then be in

19    appealing to a higher court. Do you understand that?

20                RONALD BAKER: Yes, Your Honor.

21                THE COURT: In addition, I must inform you that you

22    do have the right to file an appeal to the Superior Court on any one

23    or more of the following grounds. First, you must appeal, you may

24    appeal on the ground that your guilty plea was unlawfully induced

25    and that it was not voluntarily and understandingly made by you.

1   And if the Superior Court should rule favorably on that appeal,

2   the sentence and guilty plea would be set aside and you would be

3   granted a new trial.

4           Second, you could appeal on the ground that your

5   sentence is illegal. In which case the Superior Court agreed, you

6   would be re-sentenced or sentenced again.

7           Third, you could appeal on the ground that this Court

8   did not have jurisdiction. In which case the Superior Court

9   agreed, you would be discharged and the charges dismissed.

10          And finally, you could appeal based on the alleged

11  ineffectiveness of the attorney who represents you.

12          Do you understand these things?

13          RONALD BAKER: Yes, Your Honor.

14          THE COURT: It is not necessary that issues raised on

15  appeal be first raised in a post-sentence motion, so long as they

16  were previously raised and properly preserved by you or your

17  attorney in this Court. Do you understand that?

18          RONALD BAKER: Yes, Your Honor.

19          THE COURT: However, you can challenge the

20  legality of your sentence and the jurisdiction of this Court on

21  appeal, even if you have not, or do not, first raise them in this

22  Court. Do you understand that?

23          RONALD BAKER: Yes, Your Honor.

24          THE COURT: If you are indigent, you can file a post-

25  sentence motion and an appeal without payment of costs. Do you

17

1      MR. McGUINNESS: For the record, Judge, Mr.

2  Baker, you painted the picture.

3      RONALD BAKER: No, you painted it.

4      THE COURT: Anything else, counsel?

5      MS. HARTLEY: Judge, is it my understanding that

6  you are not requiring a CRN in this instance then?

7      THE COURT: I do not deem it necessary for there to

8  be a CRN evaluation completed before today's sentencing because

9  that DUI offense merged into the other offenses, so I don't believe

10  I'm violating the law by going forward with sentencing, even

11  without that CRN.

12      MS. HARTLEY: I just wanted that to be clear on the

13  record.

14      THE COURT: I, however, do think that the CRN

15  should be completed.

16      MS. HARTLEY: You do want a CRN then, okay.

17  Probation will set that up.

18      PROBATION OFFICER: No, that will be arranged at

19  the jail.

20      MS. HARTLEY: Okay.

21      THE COURT: Anything else?

22      MS. HARTLEY: No, Your Honor.

23  *(Plea proceeding concluded, August 18, 1997)*

24

25

19

## STENOGRAPHER'S CERTIFICATE

I hereby certify that the proceedings and evidence, upon the hearing of the above and foregoing cause, have been transcribed by me to the best of my ability and that this transcript is a correct copy of the same.

*Julie L. Lundquist*

Julie L. Lundquist

J. S24017/98

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                          :          PENNSYLVANIA
                                          :
                v.                        :
                                          :

RONALD JAMES BAKER,                :
                Appellant       :      No. 906 Harrisburg 1997

Appeal from the Judgment of Sentence in the
Court of Common Pleas of Bradford County,
Criminal Division, No. 96 CR 000716

BEFORE:  DEL SOLE, TAMILIA, and CIRILLO, P.J.E., JJ.

MEMORANDUM:                F I L E D MAR 2 5 1998

Appellant, Ronald Baker, appeals from the cumulative judgment of sentence of seven and one-half (7-1/2) to twenty-five (25) years' imprisonment imposed following a guilty plea.  After causing a head-on collision while driving without a license and under the influence of alcohol, appellant pled guilty to the following charges:  two counts of accidents involving death or personal injury while not properly licensed,[1] two counts of aggravated assault by vehicle while driving under the influence,[2] one count of driving under the influence of alcohol or controlled substance,[3] two counts of recklessly endangering another person[4] and the summary offense of driving while operating privilege is suspended or revoked, a second or

---

[1] 75 P.S § 3742.1

[2] *Id.*, § 3735.1

[3] *Id.*, § 3731(a)(1).

[4] 18 Pa.C.S. § 2705.

J. S24017/98

subsequent offense.[5]  His plea was entered pursuant to an agreement calling for a seven and one-half (7-1/2) year minimum period of incarceration with the maximum sentence to be open to the sentencing court.  As such, the agreement was a hybrid plea agreement, with the 7-1/2-year minimum constituting a negotiated plea and the remainder of the sentence constituting an open plea.  *See* ***Commonwealth v. Dalberto***, 436 Pa. Super. 391, 648 A.2d 16 (1994), *appeal denied*, 655 A.2d 983 (1995).  Due to the hybrid nature of this plea agreement, "we will allow an appeal only as to those discretionary aspects of sentencing which have not been agreed upon during the negotiation process. ***Id.*** at ____, 648 A.2d at 21.

In the instant appeal, appellant properly confined his appeal to the open portion of the plea agreement.  He claims that, while no sentence exceeded the statutory maximum, the aggregate of the consecutive sentences is excessive and inflicts an overly severe punishment.  He argues the sentencing court failed to make a sufficient statement on the record regarding its reasons for sentencing in excess of the guidelines and failed to adequately explain its reasons for imposing consecutive sentences.

Our standard of review for sentencing matters is well settled. Sentencing is a matter vested in the sound discretion of the sentencing court and the judgment of that court will not be disturbed on appeal absent an abuse of discretion. ***Commonwealth v. Campion***, 449 Pa. Super. 9, 672

---

[5] 75 Pa.C.S. § 1543; *id.*, § 6503.

J. S24017/98

A.2d 1328 (1996), *appeal denied*, 681 A.2d 1340 (1996).   In the instant case, the consecutive sentences imposed by the court were indeed within the lawful statutory maximum and do not constitute excessive sentences, despite the fact that the sentencing court deviated from the sentencing guidelines. *Id.* However, "[w]hile deviation from the guidelines is permitted, the Sentencing Code requires that the court place of record its reasons for such deviation." *Id.* at ___, 672 A.2d at 1334, *quoting* *Commonwealth v. Byrd*, 441 Pa. Super. 351, 356, 657 A.2d 961, 963 (1995).   Upon our review of the sentencing transcript, we find that the court stated sufficient reasons on the record, in appellant's presence, supporting its deviation from the guidelines and justifying the severity of the maximum sentences that were imposed, the minimum sentence having been agreed upon in the negotiated guilty plea.   Specifically, the sentencing court stated:

> THE COURT: All right, Mr. Baker, in this case, I have considered your age, the information about you that is in the pre-sentence investigation report, the information about you that has been related here this afternoon, as well as, the evidence of the circumstances of the offenses. . . .
>
> In addition I have considered your prior criminal record, your personal characteristics, your potential for rehabilitation, and all the available alternatives to total confinement, including any factors weighing in favor of probation [or] partial confinement.   After considering all these factors, I find that there is an undue risk that during any period of probation or partial confinement, you will commit another crime, that you are in need of correctional treatment and rehabilitation that can best be provided by your commitment to an

- 3 -

J. S24017/98

> institution and that a lesser sentence would depreciate the seriousness of your crimes. I, therefore, find that a sentence of total confinement is proper.
>
> . . .
>
> The Court believes that the sentence imposed is consistent with the protection needs of the public, the gravity of these offenses as they relate to the impact on the life [sic] of the victims and on the community, and the rehabilitative needs of the Defendant.
>
> . . .
>
> Mr. Baker is certainly not a stranger to the criminal justice system. He has been consistently involved with the criminal courts since 1981. The majority of his prior offenses are assaultive in nature. Furthermore, he has a very poor driving history, and he is an individual that has no business driving at all, having apparently never – never had – having a valid drivers license. He has a lengthy history of drug and alcohol abuse. He was unresponsive previously when he was sentenced to probation supervision by the Courts'. He was unresponsive to earlier parole supervision when he was sentenced by the Court and then released on parole. Prior orders of probation, parole and work release have all been violated, and the last sentence he received was a two and a half to five year sentence of incarceration, and even that, apparently had no effect on this Defendant.

(S.T., Mott, J., 8/18/97, pp. 11-15.)   Furthermore, the above-quoted statements of the trial court provided appellant with a more than adequate explanation of its reasons for imposing consecutive sentences, and, in any event, concurrent sentences would have fallen short of the 7-1/2-year minimum of the negotiated plea agreement.

- 4 -

J. S24017/98

Therefore, we conclude that no abuse of discretion was committed and the judgment of sentence should be affirmed.

Judgment of sentence affirmed.